1          **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3        **HONORABLE S. JAMES OTERO, U.S. DISTRICT JUDGE**

4

5   UNITED STATES OF AMERICA,            )
                                         )
6                  Plaintiff,            )
                                         )
7       vs.                              )    Case No. CR-O8-1273 SJO
                                         )
8   MARK BENDER,                         )
                                         )
9                  Defendant.            )
    ─────────────────────────────────────)

10

11

12                  **REPORTER'S TRANSCRIPT OF**
      **PRELIMINARY REVOCATION OF SUPERVISED RELEASE HEARING**
13                  **MONDAY, DECEMBER 14, 2015**
                         **9:49 A.M.**
14                **LOS ANGELES, CALIFORNIA**

15

16

17

18

19

20

21

22   ──────────────────────────────────────────────────────

23          CAROL JEAN ZURBORG, CSR NO. 7921, CCRR
               FEDERAL OFFICIAL COURT REPORTER
24           312 NORTH SPRING STREET, ROOM 414
               LOS ANGELES, CALIFORNIA  90012
25                    (213) 894-3539

1                    **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4      EILEEN DECKER
     United States Attorney
5      BY:  JULIUS NAM
         Assistant United States Attorney
6      United States Courthouse
     312 North Spring Street
7      Los Angeles, California 90012

8   **FOR THE DEFENDANT:**

9      HILARY LEE POTASHNER
     Federal Public Defender
10     BY:  NAEUN RIM
        Deputy Federal Public Defender
11     Central District of California
    321 East Second Street
12     Los Angeles, California 90012

13   **ALSO PRESENT:**

14     Jana Rivers, Probation Officer

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 14, 2015

 2                            9:49 A.M.

 3                            --oOo--

 4              THE COURTROOM DEPUTY:  Calling Item No. 6:  Case

 5     number CR 08-01273 SJO; United States of America versus Mark

 6     Bender.

 7         Counsel, would you please come forward and state your

 8     appearances.

 9              MR. NAM:  Good morning, Your Honor.  Julius Nam on

10     behalf of the United States.  With me at counsel table is

11     Probation Officer Jana Rivers.

12              SPECIAL AGENT:  Good morning, Your Honor.

13              MS. RIM:  Good morning, Your Honor.  Naeun Rim on

14     behalf of Mark Bender, who is present, in custody.

15              THE COURT:  The matter is here for revocation of

16     supervised release.  Let's see.  Let me find the violation.

17         The defendant is charged in a petition with six counts,

18     and then there's an additional seventh count that has been

19     charged.

20         How does Mr. Bender wish to proceed?

21              MS. RIM:  Your Honor, the parties have come to an

22     agreement with respect to Allegations One through Six, with

23     certain modifications on some of the allegations, but

24     Mr. Bender will be contesting number Seven.  So I think what I

25     would like to propose is that the Court set an evidentiary
```

1    hearing, at which point Mr. Bender will admit the allegations,

2    as amended, One through Six, but we will proceed on the

3    evidentiary hearing for number Seven.

4         Just to clarify, Your Honor, the issue with Allegation No.

5    Seven is that the state court has not yet decided whether to

6    charge Mr. Bender.  There are certain due-process implications

7    with having him admit that, as well as the fact that our

8    position would be that there is not enough evidence to find him

9    in violation of that particular allegation.  And so because the

10   state court has not reached a decision, we can't stay this

11   proceeding until they've concluded their case.

12        And at the same time, Mr. Bender denies that allegation,

13   and so we would have to have this Court reach a decision in

14   order to resolve the entire petition as alleged by the

15   probation office.

16             THE COURT:  Well, Allegation No. Seven references

17   that the defendant possessed marijuana for sale.

18             MS. RIM:  That's correct, Your Honor.

19             THE COURT:  But there appears to be other criminal

20   conduct that the state may be investigating, and that has to do

21   with the minor, 14-year-old minor.  So what's the status of

22   that?

23             MR. NAM:  That's correct, Your Honor.  I do not have

24   a clear understanding of where the state is.  I believe they

25   are still investigating the case.  So what I have been told is

```
 1   that they're still in the midst of investigation, and no
 2   charges have been formally brought.
 3            THE COURT:  That's the elephant in the room.  So if
 4   we put it over, we should put it over until that investigation
 5   is completed.
 6            MS. RIM:  But, Your Honor, I don't know how long
 7   that will take.  The issue is that it's been pending for a few
 8   months at this point, and they have not reached a decision.
 9   Mr. Bender actually has a court date for tomorrow in state
10   court, which he can't attend because he is in federal custody.
11       And the AUSA has been in contact with the DA's office.
12   They keep telling him, "We don't know yet.  We don't know yet."
13   They have a statute of limitations of years to bring that case.
14   So it's put Mr. Bender in sort of a legal limbo.  He adamantly
15   denies both of those allegations.
16       I don't know what it says that the state hasn't charged
17   him yet, and the probation office didn't even bring that
18   allegation.  I think that says something about the weight of
19   the evidence for that particular conduct, but, of course, we
20   can't say anything about it because we don't know what's going
21   on in the state court.
22            MR. NAM:  Your Honor, what Ms. Rim represented is
23   correct.  Because of concern for the liberty interest of
24   Mr. Bender at this point, the Government is ready to proceed
25   with the allegations as presented to the Court by the probation
```

1    office.  And so the Government would join Ms. Rim in seeking an

2    evidentiary hearing on Allegation No. Seven.

3         And as I've represented to the Court, because the

4    investigation into the other aspects of Mr. Bender's case is

5    ongoing and remains to be seen exactly when -- if any charges

6    will be brought in state court, the Government would ask the

7    Court to just proceed with the allegations that the probation

8    office has presented to the Court.

9              THE COURT:  So when do you propose an evidentiary

10   hearing?  Today?

11             MS. RIM:  Not today, Your Honor.  Sometime this

12   week, if the Court is available.  The parties --

13             THE COURT:  I may not be available this week, so I'm

14   prepared to handle it today if the Government is prepared.

15             MR. NAM:  Today would be difficult for the

16   Government, Your Honor.

17             THE COURT:  Why is that?

18             MR. NAM:  The officer, whom the Government is

19   wishing to call, is not available today.  We came with the

20   understanding -- or at least the parties have come with the

21   hope that the Court would set another date for evidentiary

22   hearing, but the Government is not prepared today to proceed

23   with the evidentiary hearing.  But another day this week would

24   work, Your Honor.

25             THE COURT:  Does the Allegation No. Seven make a

1   difference?

2            MS. RIM:  Yes, Your Honor.  It raises it from a

3   Grade C violation to -- I believe it's a Grade B violation.

4            MR. NAM:  That's correct, Your Honor.  And because

5   of the Criminal History Category of Mr. Bender, it makes a

6   significant difference in terms of the guidelines range.

7            MS. RIM:  The only other option, Your Honor, it's

8   something I propose, but I don't know if you have thought about

9   it again, is if they dismiss the federal petition without

10  prejudice in order to wait to see what the state does, and then

11  bring the petition back once the state has made a decision and

12  those proceedings have concluded.  But if it's not an option,

13  then I don't think that it's -- that Mr. Bender can stay in

14  custody while the state is making its decision when we don't

15  know when -- if there's ever going to be an end to that, just

16  for the last allegation.

17           THE COURT:  Mr. Bender, do you wish to enter

18  admissions to Counts One through Six?

19           MS. RIM:  It would be One, as modified according to

20  the parties' agreement; Two; Four; Five; and Six.  And my

21  understanding is the Government wishes to dismiss number Three.

22           THE COURT:  You're modifying One?

23           MR. NAM:  Yes, Your Honor.  As to Allegation No.

24  One, the last line where it says "Reports for the months of,"

25  to be modified as "May and June of 2015" only.  At the time of

1  sentencing, the Government intends to move to dismiss

2  Allegation No. Three.

3          THE COURT:  Allegation No. --

4          MR. NAM:  Three, Your Honor.

5          THE COURT:  When was he released from custody,

6  Mr. Bender?  When was he released from custody?

7          MR. NAM:  June of 2014, Your Honor -- June 19th or

8  June 20th of 2014, Your Honor.

9          MS. RIM:  To clarify, Your Honor, Mr. Bender was

10  released to a halfway house in February of 2014, and was

11  released from the halfway house on June 19 or 20, 2014, as the

12  Government stated.

13          THE COURT:  So, Mr. Bender, do you wish to enter

14  admissions to Counts One, as amended; Two; Four; Five; and Six?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Sir, by entering your admissions --

17  first of all, the record should reflect that Count One has been

18  orally amended.

19      And is the Government going to follow up with a formal

20  written amendment to Count One?

21          MR. NAM:  Yes, Your Honor.

22          THE COURT:  So Count One will read:  "Having been

23  ordered by the Court to submit to two complete full supervision

24  reports within the first five days of each month, Mr. Bender

25  failed to submit written supervision reports for the months of

```
 1    May and June 2015."
 2         Is that the proposed amendment?
 3              MR. NAM:  Yes, Your Honor.
 4              THE COURT:  Is that agreeable with counsel?
 5              MS. RIM:  Yes, Your Honor.
 6              THE COURT:  And, Mr. Bender, do you understand the
 7    proposed amendment made orally here in court?
 8              THE DEFENDANT:  Yes, sir.
 9              THE COURT:  And it previously read that you failed
10    to submit reports for November and December 2014 and January
11    through -- and January through June of 2015.
12         What's the status of that allegation?
13              MR. NAM:  The allegation as to between November and
14    April of -- November 2014 and April 2015, Your Honor?
15              THE COURT:  No, from November -- November and
16    December 2014 and January through June 2015.
17              MR. NAM:  Yes, Your Honor.  That is the allegation
18    that the Government is proposing amendment for.
19              THE COURT:  Well, what I'm concerned about is
20    whether at a later date you will come back and move to -- on a
21    petition for revocation based on his failure to comply with the
22    submission reports for the months that are stated here.  That's
23    not what the Government intends to do?
24              MR. NAM:  That is not the Government's intent,
25    Your Honor.  And that portion is being contested.  And per the
```

1  parties' agreement, the Government will not be proceeding at

2  any point to allege those failures between November 2014 and

3  April of 2015.

4           THE COURT:  Okay.  So that's clear.

5      Mr. Bender, have you been given a copy of the allegations?

6           THE DEFENDANT:  Yes, sir, I have.

7           THE COURT:  Do you understand the allegations?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  And have you been able to discuss the

10 allegations with your counsel?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And do you have any questions of the

13 Court or your counsel regarding the allegations?

14          THE DEFENDANT:  What allegation, Your Honor?

15          THE COURT:  Do you have any questions of the Court

16 regarding any of the allegations?

17          THE DEFENDANT:  Only Seven, Your Honor.

18          THE COURT:  May I have the defendant sworn, please.

19          THE COURTROOM DEPUTY:  Yes.

20      Sir, would you please raise your right hand to be sworn.

21          **MARK BENDER, THE DEFENDANT, WAS SWORN**

22          THE DEFENDANT:  Yes, sir.

23          THE COURTROOM DEPUTY:  Thank you.

24          THE COURT:  Mr. Bender, by entering your admissions,

25 you are giving up certain valuable rights.  These rights have

been explained to you by counsel.  I am going to explain them again.  You are giving up your right to a speedy and public hearing to determine whether, in fact, you are in violation of your conditions of supervised release.  You are giving up your right to assistance of counsel at that hearing.  If you cannot afford counsel, one is appointed at no cost to yourself.

You are giving up your right to see and hear the evidence and cross-examine all of the witnesses called to testify against you.  The Government has the burden of proof at the proceeding, at the hearing.  And you are giving up your right to cross-examine the witnesses that the Government would call. You are giving up your right to object to physical evidence the Government would offer.

You are giving up your right against self-incrimination. You have the right to remain silent.  By entering admissions to the counts, One, as amended; Two; Four; Five; and Six you are incriminating yourself because your admissions incriminate you. So you are giving up your right against self-incrimination.

You are giving up your right to call your own witnesses at the hearing for those counts, to use the subpoena power of the court to compel the attendance of witnesses and the production of physical evidence.  You are giving up your right to testify at the hearing.  That's to tell your side of the story, so to speak.  At the same time you cannot be compelled to testify or incriminate yourself in any way.  If you chose not to testify,

1    the fact that you did not testify cannot be used against you.

2        Have you discussed with your attorney all of these rights,

3    sir?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Have you -- have all your questions that

6    you have regarding these rights been answered by your attorney?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  And do you feel that you had enough time

9    to consult with counsel regarding any of these rights --

10            THE DEFENDANT:  Yes.

11            THE COURT:  -- before entering your admissions?

12            THE DEFENDANT:  Yes.

13            THE COURT:  At this time do you freely, voluntarily

14    and expressly give up your rights and agree that the Court can

15    continue to take your admissions here?

16            THE DEFENDANT:  For Counts One through Six, yes,

17    Your Honor.

18            THE COURT:  Yes.  And again, for clarification,

19    Count Seven remains.  We have to set a date for that hearing.

20    I recognize that.  We are only -- the allegations are One, Two,

21    Four, Five and Six, and One is amended.

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Does counsel join and concur in each of

24    the admissions?

25            MS. RIM:  Yes, Your Honor.

1          THE COURT:  The Court has to explain the

2     consequences.  We cannot cover all of the consequences of the

3     admissions here.  If you admit the violations, it's a Grade B

4     violation.

5          And then what would the guideline -- what would the

6     guideline range be?

7               MR. NAM:  The guidelines range, Your Honor, would be

8     21 to 24 months.

9               MS. RIM:  Your Honor, the Allegations One through

10    Six would be Grade C.

11              THE COURT:  Grade C?

12              MR. NAM:  I'm sorry, Your Honor.  As to Six it would

13    be Grade C, and 8 to 14 months, Your Honor.

14              THE COURT:  How much?

15              MR. NAM:  8 to 14 months.

16              THE COURT:  So the guideline range would be 8 to 14

17    months.  Separate and apart from the guideline range, the Court

18    has the discretion to impose a sentence that's higher or less

19    than called for by the guideline range.  And it appears that

20    the maximum sentence that the Court could impose would be 24

21    months.  And the Court can impose a sentence less than that and

22    then impose additional conditions of supervised release, place

23    you back under the original conditions of supervised release,

24    add additional conditions of supervised release.

25          So the maximum sentence that could be imposed in this

1    case, sir, is 24 months.  Do you understand that consequence?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  If you're on probation, parole or

4    supervised release for any other Court, your admissions here

5    could have an effect before another judge.  You could be found

6    in violation of probation, parole or supervised release if you

7    currently have that matter before another judge, and that's a

8    possible consequence.

9       Do you understand that?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Is the Government satisfied the Court

12   has complied with all the requirements of the Federal Rules of

13   Criminal Procedure?

14        MR. NAM:  Yes, Your Honor.

15        THE COURT:  Mr. Bender, are you ready to enter your

16   admissions?

17      (Counsel and defendant conferred off the record.)

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  Count One, having been ordered by the

20   Court to submit truthful and complete supervision reports

21   within the first five days of each month, you, Mr. Bender,

22   failed to submit written supervision reports for the months of

23   May and June 2015.

24      Do you admit that?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Count Two, having been ordered by the

2    Court to participate in an outpatient substance abuse treatment

3    and counseling program, that includes urinalysis, breath and

4    sweat-patch testing as directed by the probation officer, on

5    October 3rd, 6th, 18th, 31st, and November 5th, 13th, 15th

6    21st, December 5th and December 9th, 2014, you, Mr. Bender,

7    failed to report for random drug testing.

8         Do you admit that?

9          MS. RIM:  At Sharper Future.

10          THE COURT:  At Sharper Future, yes.

11          THE DEFENDANT:  Yes, Your Honor, but I also have

12    reasons.

13          THE COURT:  Mr. Bender, you can consult with

14    counsel.  If you have a question, consult first with counsel

15    before you address the Court.  It's in your best interest.  You

16    can step away from the microphone, if you wish.

17          MS. RIM:  I think we're okay.

18          THE COURT:  So in reference to Count Two, do you

19    have any questions regarding your admissions to Count Two, sir?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  So I am going to read it again.  And are

22    you ready to admit all of the allegations contained in Count

23    Two?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Having been ordered by the Court to

**UNITED STATES DISTRICT COURT**

1    participate in an outpatient substance abuse treatment and

2    counseling program that includes urinalysis, breath and sweat-

3    patch testing as directed by the probation officer, on October

4    3rd, October 6th, October 18th, October 31st, November 5th,

5    November 13th, November 15th, November 21st and December 5th

6    and December 9th, 2014, you, Mr. Bender, failed to report for

7    random drug testing at Sharper Future.

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Do you admit that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Count Four, having been ordered by the

12   Court to participate in an outpatient substance abuse treatment

13   and counseling program that includes urinalysis, breath and

14   sweat-patch testing as directed by the probation officer, on

15   May 26, June 6, June 17th, June 25th and July 6, 2015, you,

16   sir, failed to report for random drug testing at Sharper

17   Future.

18        Do you admit that?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Count Five, having been ordered by the

21   Court to refrain from unlawful use of a controlled substance,

22   on July 17th, you, Mr. Bender, used cocaine and marijuana as

23   evidenced by the laboratory analysis of your urine sample.

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Count Six, having been ordered by the

1  Court to notify the probation officer within 72 hours of being

2  arrested or questioned by a law enforcement officer, on July

3  25th, 2015, you, sir, were questioned by an officer from San

4  Bernardino Police Department and failed to notify the probation

5  officer.

6      How do you plead -- do you admit that?

7          THE DEFENDANT:  Guilty, Your Honor.

8          THE COURT:  You admit that?

9          THE DEFENDANT:  I admit it.

10          THE COURT:  Does counsel join in the admissions?

11         MS. RIM:  Yes, Your Honor.

12          THE COURT:  The Court finds the admissions to be

13  freely, voluntarily and expressly made.  The Court finds that

14  the defendant has entered his admissions freely and voluntarily

15  with the full understanding of the charges and consequences.

16  The Court further finds that the defendant understands all of

17  his constitutional and statutory rights.  He freely,

18  voluntarily and expressly gives up each and every one of those

19  rights.

20     Now we go to the issue of sentencing.

21         MS. RIM:  Your Honor, I would like to defer

22  sentencing until after the outcome of the evidentiary hearing.

23  Obviously, what I would ask for, defer, depending on whether

24  the Court finds him in violation of number Seven, as well as

25  the fact I think the Government is refusing to dismiss number

```
1    Seven without prejudice because the AUSA's understanding is if

2    the Court revokes number Seven now, it ends his supervision,

3    and they cannot move forward with number Seven again.

4              MR. NAM:  That's correct, Your Honor.

5              THE COURT:  You know, this is where we get into kind

6    of the frustration with sentencing guidelines.  We have a

7    defendant here who has a very serious criminal history

8    category.  He is a felon in possession of a firearm.  He was

9    placed on supervised release.  Soon after being released from

10   the halfway house, he starts to commit violations of his

11   conditions of supervised release, so many that they're hard to

12   really count here, but they have been admitted here in the

13   course of today's hearing.

14      The maximum sentence that the Court can impose is 24

15   months.  The Government is moving to prove its case on -- with

16   Count Seven, which is another drug-related offense involving

17   marijuana, the sales of marijuana.  And I recognize that under

18   the guidelines, that the guidelines provide for a higher

19   guideline range, but at the end of the day, the 3553 factors

20   really should guide the Court in terms of an appropriate

21   sentence in this case.

22             MS. RIM:  Well, Your Honor, if I may speak to that.

23   What I would present at sentencing for just Allegations One

24   through Six -- and this is sort of the nature of the probation

25   reports.  They don't state anything positive about the
```

1  supervisee.  Mr. Bender was working the entire time he was on

2  supervised release, and many of the drug tests that he missed

3  were problems that Mr. Bender was having with a scheduling

4  conflict.

5      He worked basically a graveyard shift at the company that

6  he was at, and that prevented him at times to be able to call

7  the testing facility during the window they asked him to call

8  or arriving during the window they asked him to come.

9      And there were times when he missed at Sharper Future, he

10  would go to the probation office to test.  And his tests often

11  came out to be negative, that he wasn't using drugs.  Obviously

12  he did test dirty at one point.  But Allegations One through

13  Six, Your Honor, I would argue reflects somebody who --

14  Mr. Bender was also homeless on and off during this time.

15  There was a point in time that he didn't have a cell phone

16  because he wasn't able to pay his bill, which made him unable

17  to contact the drug testing office.

18      So in terms of Allegations One through Six, this is a case

19  where the defense would argue for some type of remedial

20  measures, such as residential drug treatment or a halfway

21  house.  Mr. Bender was working for, I believe, a year before he

22  did lose his job, because he was a temporary worker and they

23  weren't able to give him a permanent position.  But when he was

24  working, this was someone who was able to actually comply with

25  most of the other rules of supervision.

1    Now, the seventh allegation is obviously more serious, and

2    it is an allegation that is inflammatory, but there is -- I

3    would submit that there is just not -- I want to make clear

4    that these accusations are accusations that Mr. Bender

5    adamantly denies.  The vehicle that he was found in did not

6    belong to him, and that is where the drugs were found.  He

7    consented to a search of the vehicle, and these are all things

8    that, you know, we would bring to light at the evidentiary

9    hearing before this Court.

10    With respect to the minor, I understand that that is the

11    most serious allegation, but it is not something that the

12    probation office has even alleged because the evidence is --

13    it's not yet sufficient to rise to the level of even an

14    allegation.  And the state court hasn't brought charges, and I

15    don't know what that means.

16    What I know in terms of Mr. Bender is that he denies

17    having had any sexual contact with this girl.  She did not even

18    go to the police to report this contact.  They went to her a

19    couple of days after Mr. Bender's arrest.  My understanding is

20    that she was a run away, and that even before they had arrested

21    Mr. Bender, her grandmother had informed the police that she

22    believed her daughter was prostituting herself.

23    Now, in terms of what evidence there is and whether -- I

24    don't have a recording of that interview.  I don't know if this

25    girl identified Mr. Bender to even say that was the person she

1    was talking about.  There's a number of questions that I have

2    that I haven't even had any chance to ask these officers about

3    or the AUSA.  I don't think the AUSA has the answer to these

4    questions.

5        But that is an entirely separate and far more serious

6    matter, I would submit, than Allegations One through Six, which

7    just reflects a person who is homeless and has a drug problem

8    and hasn't been consistently following the rules.  But he was

9    employed during that entire time, and he was in contact with

10   the probation office.  For example, he did test on March 8th of

11   2015, which is only evident from the violation, that the

12   probation officer alleged.

13       This was a large reason why I asked for the chronological

14   record of the probation office because the report doesn't state

15   how many times Mr. Bender tried to contact probation, how many

16   times he tried to explain why he wasn't able to attend a drug

17   test.  But as the Court is aware, a person doesn't -- doesn't

18   get out of a drug test by missing it on one day.  If they are

19   tested the next day and it comes out negative, it generally

20   means that they weren't using the day before either.

21       And so all of this information, Your Honor, I don't think

22   is before the Court, and I would hope that the Court is not

23   prepared to make a -- issue a sentence based on simply the

24   negative things that the probation officer has alleged in the

25   violation report.

1          THE COURT:  A person with a Criminal History

2     Category VI, who is a felon in possession of a weapon, has to

3     do their best to make sure they comply with the conditions of

4     supervised release, and based on his admissions here, he has

5     not done that, period.  Separate and apart from that, what's

6     inflammatory are the allegations concerning the minor.

7          Putting aside the issue of prostitution, residing in a

8     hotel room with a minor, with a condom, is inflammatory.  I can

9     put that aside.  That's not being charged here.  But he hasn't

10    complied with the very basics of supervised release.  So if you

11    want to put this over for another day, we can.

12          MR. NAM:  Yes, Your Honor, that would be the

13    Government's request as well.  And at the time of the

14    evidentiary, the Government will hopefully have the opportunity

15    to rebut some of the comments and arguments that defense

16    counsel has begun to make.  Because the violations that are

17    alleged and are admitted are so numerous and also with

18    Allegation No. Seven, that really changes the nature of the

19    totality of the allegations.  So the Government would like to

20    ask the Court to set --

21          THE COURT:  We are really two ships passing in the

22    night because I really don't understand the Government's or

23    defense counsel's issue regarding Count No. Seven.  There are

24    so many other allegations here that he's admitted to that

25    reflect a very serious breach of trust.  And with the

```
 1    defendant's serious criminal history and the fact that it's a
 2    gun-related offense, and if you have a gun-related offense, you
 3    better do your best to make sure that you comply with your
 4    conditions of supervised release.  None of that is reflected
 5    here.  And we will just have to put this over for another date.
 6         So what date do you wish?
 7              MS. RIM:  Your Honor, I'm available anytime this
 8    week except for Thursday.  I'm also available after the 1st of
 9    the year.  I am available on the 21st, which is Monday, but I
10    don't believe the probation officer is.
11              THE COURT:  When is the Government ready to proceed
12    on -- what do you need for this Count Seven?
13              MR. NAM:  The officer, Your Honor, who --
14              THE COURT:  Where is the officer?
15              MR. NAM:  He's a San Bernardino Police Department
16    officer, and he will be available, I believe, Wednesday
17    afternoon, if the Court is available at that time, or the first
18    week of January.  I think the time will be more flexible then,
19    but this week Wednesday afternoon is -- it may be the only
20    available time -- window of time.
21              THE COURT:  Well, I think San Bernardino is pretty
22    busy these days, so we will put this over to a date in January.
23         May I have a date?
24              THE COURTROOM DEPUTY:  May the clerk suggest
25    Thursday, January the 7th, Your Honor, at 9:00 a.m.?
```

1        THE COURT:  Okay.  It's set for Thursday, January

2   7th at -- make it 10:00.

3        (Counsel and defendant conferred off the record.)

4        THE COURT:  Anything further?

5        MS. RIM:  Nothing further, thank you.

6        THE COURT:  Thank you.

7        MR. NAM:  Thank you, Your Honor.

8        (Proceedings concluded at 10:24 a.m.)

9                        --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6            I, CAROL JEAN ZURBORG, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date:  March 15, 2016

17

18

19                    /s/ CAROL JEAN ZURBORG

20                    _____
                      CAROL JEAN ZURBORG, CSR NO. 7921, CCRR
21                       Federal Official Court Reporter

22

23

24

25